IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEROME M. TEATS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:11-0753 |
| | ) | Judge Campbell/Bryant |
| VICTOR S. (TORRY) JOHNSON, III, et al., | ) | |
| | ) | |
| Defendants. | ) | |

To: The Honorable Todd J. Campbell, District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

Currently pending in this action under 42 U.S.C. § 1983 is defendant David Torrence's motion to dismiss (Docket Entry No. 42). As further explained below, having considered this motion and its respective papers, and the response by the plaintiff (Docket Entry No. 72), the undersigned Magistrate Judge hereby recommends that defendant's motion be GRANTED.

### II. Factual Background

Plaintiff Jerome Teats claims that he was to receive an effective twelve-year prison sentence as part of an April 12, 2001 plea agreement stemming from charges against him for multiple drug and weapon-related offenses. (Docket Entry No. 43 at p. 2). As part of the alleged plea agreement, the plaintiff further asserts that he was to receive pretrial sentence credits for seven months and twenty-nine days. *Id*. When a document formalizing the judgment of the court was entered, the plaintiff claims that the pretrial sentence credits were not taken into account and that as a result he was forced to remain incarcerated by the Tennessee Department of

Correction (TDOC) for one to eight months past the expiration of his correct sentence. *Id*. The plaintiff states that he learned of this alleged discrepancy prior to July 20, 2010, the date on which he filed a motion to amend/correct the judgment. *Id*. *See also* Docket Entry No. 1 at p.6. The plaintiff alleges that he was granted the aforementioned credits only after he mailed a "follow up letter" to "the clerk of the court" on September 2, 2010. *Id*. An order was entered on September 13, 2011 granting the pretrial sentence credits to the plaintiff, and he was released by the TDOC. *Id*.

After leaving prison, the plaintiff initiated this action alleging a variety of claims against various state and local entities and their employees. *Id*. This motion, filed by defendant David Torrence, is in response to the plaintiff's claims set forth in Count 6 of the original complaint against Mr. Torrence, apparently in his personal capacity, for his alleged actions while he served as Davidson County Criminal Court Clerk. (Docket Entry No. 43 at p. 3). The plaintiff brings suit under 42 U.S.C. § 1983 alleging violations of his rights under the federal Constitution and laws of the United States, and he also asserts various state law negligence claims. (Docket Entry No. 1 at p. 26-33).

Specifically, the plaintiff claims that Mr. Torrence "caused plaintiff to be denied access to court, to suffer cruel and unusual punishment, over-detention, and be deprived of his liberty a minimum of one to eight months or more." (Docket Entry No. 1 at p. 26). The complaint asserts that these alleged injuries were caused by a number of purported actions and inaction by the defendant. *Id*.

Under the plaintiff's **first** theory, the defendant "failed to notify any party between August 20, 2000 and September 13, 2010 that said judgments did not contain time Teats had

already served in incarceration from August 14, 2000 until April 12, 2001." (Docket Entry No. 1 at p. 27). **Second**, the complaint alleges liability against the defendant for failure to "properly supervise, train and/or control" the employees of the Clerk's Office "responsible for all pertinent matters relating to assuring complete and accurate information being placed on uniform judgments in the case." (Docket Entry No. 1 at p. 27). In conjunction with this claim, the plaintiff states that the defendant "implicitly" authorized, approved and/or knowingly acquiesced "in the unconstitutional actions of said employees." *Id*.

**Third**, the plaintiff argues that liability should attach to the defendant because "in being notified, in July of 2010, of plaintiff's not having received the appropriate sentence credits [the] defendant … failed to include said sentence credits … on the uniform judgments… [and] he failed to take immediate action to have the motion to correct-amend placed on the docket or otherwise brought to the court's attention in order to have said judgment amended to include said credits and/or secure plaintiff's release." (Docket Entry No. 1 at p. 27-28). **Fourth**, the plaintiff complains that the defendant "hindered, delayed or otherwise prevented John-Jane Doe Deputy [Clerks] [sic], Clerk's office employees or other parties in the case from placing the July 23, 2010 motion to amend-correct judgment filed by plaintiff on the docket or from providing such to Judge Wyatt to prevent the expedited granting of said credits and plaintiff's release expeditiously." (Docket Entry No. 1 at p. 28).[1] The **fifth** and final Section 1983 claim states that the defendant "conspired" with various other defendants to prevent the plaintiff's July 2010 motion from being immediately placed on the docket. (Docket Entry No. 1 at p. 28-29).

---

[1] Elsewhere in his complaint, Plaintiff consistently refers to the date of his motion to amend or correct the judgment as July 20, 2010, rather than July 23, 2010.

Plaintiff also alleges state law claims: (1) negligence *per se* in failing to make sure that the uniform judgment document was correct and made available to all parties; (2) negligence *per se* in failing to properly control, train and/or supervise his employees; (3) negligent infliction of emotional distress in allowing Plaintiff to be incarcerated too long; and (4) various acts of negligence as a government employee subject to the Tennessee Governmental Tort Liability Act (TGTLA), Tenn. Code Ann. § 29-20-201, *et seq*. (Docket Entry No. 43 at p. 3).

The defendant asserts in this motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim. (Docket Entry No. 43 at p. 3). In support of this claim, the defendant raises three affirmative defense theories: (1) that the defendant is entitled to absolute immunity as a "quasi-judicial" officer of the court (Docket Entry No. 43 at p. 4-5); (2) that the defendant is entitled to qualified immunity under the three-part test articulated in *Feathers v. Avey*, 319 F.3d 843, 848 (6th Cir. 2003) (Docket Entry No. 43, p. 5-6); and (3) that the plaintiff's § 1983 claims are barred by the statute of limitations. (Docket Entry No. 43 at p. 8).

### III. Conclusions of Law

A. <u>Standard of Review</u>

Rule 12(b)(6) dictates that "a party may assert" by motion the defense that the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Supreme Court articulated the proper standard for considering a motion to dismiss under Rule 12(b)(6) in *Bell Atlantic v. Twombly*, 550 U.S. 544, 554-58 (2007). Under the *Twombly* standard, the plaintiff must allege in her complaint "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court made clear this standard is

not limited to antitrust cases, announcing that "[t]hough *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on [the Court's] interpretation and application of Rule 8 [of the Federal Rules of Civil Procedure]." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). The "decision in *Twombly* expounded the pleading standard for 'all civil actions.'" *Id*.

As the Supreme Court reasserted in *Iqbal*, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557). The proposition that a court must accept as true all of the well-pleaded factual allegations in a complaint is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citations omitted). Determining whether a complaint states a claim for relief that is plausible on its face is a context-specific exercise that requires a court to "draw on its judicial experience and common sense." *Id*. at 679.

  B. Analysis of the Motion

    1. Absolute Immunity

In his motion to dismiss, the defendant first raises the affirmative defense that he is entitled to absolute immunity because he was acting in a quasi-judicial capacity when he administered his duties as Criminal Court Clerk. (Docket Entry No. 43 at p. 5). The plaintiff responds with an argument that in order for the protection of quasi-judicial immunity to be applied to an officer of the court, she must be exercising discretion in the questioned activity. (Docket Entry No. 72 at p. 10). The plaintiff offers a strong presentation of outside

jurisprudence to support his argument. However, the Sixth Circuit has rejected the proposed "discretionary conduct" distinction. *See Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988)("**Whether an act is judicial in character does not depend on whether it is discretionary**.")(emphasis added). The plaintiff in *Foster* brought suit against the municipal court clerk based on the issuance of an invalid warrant which led to the plaintiff's arrest. *Id*. at 417. The Sixth Circuit held, however, that the court clerk was entitled to absolute judicial immunity because his action in issuing the warrant was judicial in nature, even though he did not exercise any discretion in so doing. *Id*. at 417-18.

The plaintiff cites the United States Supreme Court's opinion in *Antoine v. Byers & Anderson Inc*. as supporting the proposition that absolute immunity only extends to court officers who themselves exercise individual discretion. (Docket Entry No. 72 at p. 7)(discussing *Antoine*, 508 U.S. 429, 434 (1993)). The Court in *Antoine* declined to extend absolute immunity to court reporters because they "do not exercise the kind of judgment that is protected by the doctrine of judicial immunity." *Antoine*, 508 U.S. at 437. The plaintiff in *Antoine* sought to hold the defendant stenographer liable for failure to produce a transcript of a federal criminal trial, and the Supreme Court obliged. Id. at 430-31. The plaintiff *sub judice* has interpreted the Supreme Court's reasoning as follows:

> Where Torrence does not have discretion and his duties are mandated by state and federal law then such activities do not enjoy the protections of quasi-judicial immunity.

(Docket Entry No. 72 at p. 8-9)(citing *Harbeck v. Smith, et al*, 814 F.Supp.2d 608, 630 (E.D. Va. 2011)). However, as the Seventh Circuit has articulated, the rule of *Antoine* is that:

> [M]inisterial acts unrelated to the function immunity is intended to

> protect are not covered by absolute immunity. *Antoine* and *Forrester* do not support the proposition that judicial acts that are part of the judicial function are excluded from absolute immunity because they could be characterized as nondiscretionary or even ministerial.

*Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996). While the plaintiff's argument reasonably applies the plain language of the Court's opinion in *Antoine* as applied by the Eastern District of Virginia, the Sixth Circuit has not applied the quasi-judicial immunity doctrine in this fashion.

The Sixth Circuit has not explicitly adopted the Seventh Circuit's construction of *Antoine*, but it has consistently followed a similar approach through continuing to apply *Foster*'s rejection of the discretion distinction even after *Antoine* was decided. *See, e.g.*, *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997)(applying *Foster* in holding that juvenile court referees had absolute immunity from plaintiff's Section 1983 claims); *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir. 1994)(applying *Foster* only one year after *Antoine* was handed down to extend quasi-judicial immunity to defendant probate court administrator).

*See also Johns v. Bonnyman*, 109 Fed.Appx. 19, 21 (6th Cir. Aug. 6, 2004)(not reported)(citing *Foster* in upholding quasi-judicial immunity for court clerk who, pursuant to judicial order, refused to file plaintiff's petition); *Bradley v. United States*, 84 Fed. Appx. 492, 493 (6th Cir. Dec. 1, 2003)(not reported)(citing *Foster* as supporting quasi-judicial immunity for court clerk who allegedly delayed plaintiff's habeas corpus petition); *Gallagher v. Lane*, 75 Fed.Appx. 440, 441 (6th Cir. Sept. 16, 2003)(not reported)(citing *Foster* as basis for quasi-judicial immunity extending to court clerk who withdrew funds from prison trust account to pay court ordered expenses); *Wojnicz v. Davis*, 80 Fed.Appx. 382, 383 (6th Cir. July 29, 2003)(not

reported)(citing *Foster* as supporting quasi-judicial immunity for a court clerk who rejected plaintiff's state habeas petition); *Lyle v. Jackson*, 49 Fed.Appx. 492, 494 (6th Cir. Sept. 17, 2002)(not reported)(citing *Foster* in affirming dismissal of plaintiff's motion to amend to add court clerk as a defendant based on futility of adding an immune party where clerk allegedly failed to provide the plaintiff with requested copies of filings and transcripts); *Harris v. Suter*, 3 Fed.Appx. 365, 366 (6th Cir. Feb. 1, 2001)(not reported)(citing *Foster* in affirming district court's grant of absolute immunity to clerk of the Supreme Court who returned plaintiff's improperly filed petition for certiorari).

Furthermore, every district court in the Sixth Circuit continues to rely on *Foster* in considering the issue of quasi-judicial immunity. *See, e.g., Freeman v. Gay*, 2012 WL 2061557 at *17 (M.D. Tenn. June 7, 2012)(slip copy)(citing *Foster* for the proposition that actions taken by court clerks in performance of judicial functions are protected by quasi-judicial immunity); *Yarbrough v. Garret*, 579 F.Supp.2d 856, 873-74 (E.D. Mich. 2008)(referencing *Foster* numerous times in extending quasi-judicial immunity to court clerk for claims alleging failure to respond to plaintiff prisoner's transcript requests); *Sampson v. City of Xenia*, 108 F.Supp.2d 821, 829 (S.D. Ohio 1999)(relying on *Foster* in finding that defendant court clerk had quasi-judicial immunity in suit arising out of the alleged failure to "ensure that [plaintiff's] papers reached the … jail"); *Baze v. Jump*, 2010 WL 1872879 at *2 (E.D. Ky. May 7, 2010)(not reported)(extending quasi-judicial immunity to court clerk in Section 1983 suit alleging failure to accept the plaintiff prisoner's motions and citing *Bush*, 38 F.3d at 847-48, which discussed and applied *Foster*); *Borden v. Raley,* 2008 WL 2038903 at *4 (W.D. Ky. May 12, 2008)(not reported)(relying on *Foster* in holding that defendant court clerk had quasi-judicial immunity

from plaintiff's Section 1983 claims alleging failure to promptly schedule hearings); *Jonaitis v. Morrison*, 2008 WL 151252 at *3 (W.D. Mich. Jan. 14, 2008)(not reported)(discussing *Foster* in finding that court administrator had quasi-judicial immunity from plaintiff's Section 1983 complaint alleging unfair treatment of filings with the court); *Christensen v. Wiseman*, 2011 WL 4376099 at *8-9 (N.D. Ohio Sept. 20, 2011)(not reported)(finding six defendant court clerks entitled to quasi-judicial immunity citing *Foster* in action apparently stemming from clerks' acceptance of opposing litigant's filings with the court); *Brummitt v. Kerns*, 2010 WL 4941637 at *2 (E.D. Tenn. Nov. 30, 2010)(not reported)(citing *Foster* in finding quasi-judicial immunity for court clerk against plaintiff's Section 1983 claims alleging that the defendant "misdirected a motion and affidavit that was filed with the courts"); *Boling v. Gibson Co.*, 2006 WL 42178 at *2 (W.D. Tenn. Jan. 6, 2006)(not reported)(discussing *Bush*, 38 F.3d at 847, which discussed and applied *Foster*, in ruling that plaintiff's claims against defendant court clerk should be dismissed).

The great weight of the cases confirms that *Foster* and its progeny remain the controlling authority in the Sixth Circuit for considering judicial officers' claims for quasi-judicial immunity.

In the Sixth Circuit, "[i]t is well established that judges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions." *Foster*, 864 F.2d at 417 (citing *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973), which applied absolute immunity to municipal court clerks). The distinction should be made between judicial or quasi-judicial functions and non-judicial functions. *Id*. The key inquiry is "whether the function in question is a 'truly judicial act or an act that simply happens

to have been done by judges.'" *Id*. (quoting *Sparks v. Character and Fitness Committee of Kentucky*, 859 F.2d 428 (6th Cir. 1988)). The United States Supreme Court has endorsed this "functional" approach. *See Forrester v. White*, 484 U.S. 219, 224 (1988). The court should look to "'the nature of the function performed, not the identity of the actor who performed it.'" *Bush*, 38 F.3d at 847 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). In *Bush*, the Sixth Circuit affirmed the district court's conclusion that when an officer of the court acts "as an arm of the court" absolute quasi-judicial immunity should apply. *Id*. A court officer's "enforcing or executing a court order is intrinsically associated with a judicial proceeding." *Id*.

In extending absolute immunity to court clerks conducting quasi-judicial acts, the court avoids the illogical situation where a judge has immunity "in making a judicial determination and then [holding] the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law." *Id*. at 848.

In the case at bar, the conduct in question arises out of what the defendant did or did not do in the exercise of his duties as court clerk. The filing of judicial orders and the placement of motions on the docket are functions of the court clerk that "constitute 'basic and integral parts of the judicial function.'" *See Bush*, 38 F.3d at 847 (affirming the district court's ruling in Section 1983 action that absolute immunity extended to county probate court administrator who placed juvenile with violent history in non-secure detention facility subject to decision of referee). *See also Foster*, 864 F.2d at 417 (reversing district court's judgment and extending absolute immunity in Section 1983 suit to court clerk who issued bench warrant despite plaintiff's sufficient payment of outstanding fine); *Bradley*, 84 Fed.Appx. at 493 (affirming district court's

determination that court clerk had absolute immunity for delays in plaintiff's Section 2241 petition because conduct was within quasi-judicial duties); *Wojnicz*, 80 Fed. Appx. at 383-84 (not reported)(affirming district court's ruling that court clerk had absolute immunity for Section 1983 suit regarding habeas petition because the "allegations against the defendants [including state supreme court clerk] involve actions taken while performing their judicial and quasi-judicial duties processing the … petition." ).

The cases make clear that in the Sixth Circuit absolute immunity is properly applied to judicial employees "for the performance of their judicial and quasi-judicial duties." *See id*. at 383. The cases also make clear that the scope of "quasi-judicial duties" includes the issuance of court orders, *see, e.g., Foster*, 864 F.2d at 417 (invalid arrest warrant), managing the court's docket, *see, e.g., Bradley*, 84 Fed. Appx. At 493 (delay of plaintiff's petition) and handling the filings and requests of the parties, *see, e.g., Yarbrough*, 579 F.Supp.2d at 873-75 (requests for transcripts). The plaintiff's Section 1983 allegations each seek to establish liability for conduct encompassed in the course of carrying out the defendant's quasi-judicial duties: (1) alleged failures to make the final judgment document available and to alert parties that the judgment document did not contain pretrial sentence credits; (2) alleged failure to manage the employees of the court clerk's office in their handling of uniform judgments; (3) alleged failure to take immediate action to correct the final judgment document and grant the pretrial credits when he became aware of the discrepancy; (4) alleged hindrance and/or delay of subordinates from placing the motion to amend on the docket immediately; and (5) conspiracy to prevent the motion from being immediately placed on the docket.

Each of these claims stems from the duties the defendant carries out as court clerk that

are properly qualified as "quasi-judicial" because they are "basic and integral parts of the judicial function." *Bush*, 38 F.3d at 847. The management of the docket and the publication of judicial orders are functions carried out by the court clerk "as an arm of the court" and are "intrinsically associated with a judicial proceeding." *See id.* To withhold immunity for court clerks in the exercise of their duties, and to hold them accountable for failure to alert the parties to errors in the judgments of the court or to correct such errors themselves, would create the absurd circumstance sought to be prevented through quasi-judicial immunity pinpointed in *Bush*, discussed *supra* at 10, with the court clerk second-guessing the judgment of the judge.

Finally, the dispatch with which the clerk handles a motion to amend/correct a 9-year-old judgment is bound to differ from the course of proceedings with regard to filings in an active case, and would seem likely to be affected by the need to locate the physical file of the 2001 case, and perhaps the need to consult with the chambers of the sentencing judge. *See Bush*, 38 F.3d at 847. Such functions are plainly "integral" to the judicial function. Because the alleged conduct of Defendant Torrence is properly qualified as "truly judicial" in nature, *see Foster*, 864 F.2d at 847, the defendant is protected from the plaintiff's suit with absolute immunity.

### 2. State Law Negligence Claims

The plaintiff alleges a number of negligence claims under state common law and the TGTLA. However, as the plaintiff's federal Section 1983 claims must be dismissed, the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims. A district court may decline to exercise supplemental jurisdiction when all claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). District courts retain broad discretion to decline supplemental jurisdiction in such actions. *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350-52 (1988); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). In making a determination, the court should consider such factors as judicial economy, convenience, fairness, and comity. *Cohill*, 484 U.S. at 350 (considering provisions of 28 U.S. § 1367(c)). Generally, the court should decline to exercise its supplemental jurisdiction over state law claims when all federal claims have been dismissed. *Musson*, 89 F.3d at 1254-55. *See also WHS Entertainment Ventures v. Utd. Paperworkers Int'l*, 997 F.Supp. 946, 954 (6th Cir. 1998)("While retaining jurisdiction is sometimes appropriate, the preferred course of action is to decline to exercise pendent jurisdiction.")(citing *Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir. 1998)).

With this preference in mind, the factors weigh in favor of declining supplemental jurisdiction in the case at bar. Looking to the factor of judicial economy, the court must take up two considerations: (1) the extent to which the federal court has expended time or resources on the state law claims, and (2) the degree to which a state court would be required to replicate the federal court's efforts. *WHS Entertainment*, 997 F.Supp. at 954 (citing *State v. 777 N. White Station Road, Memphis, Tenn.*, 937 F.Supp. 1296, 1305 (W.D. Tenn. 1996). Under the first consideration, the case at bar has led to limited expenditure of time and resources by the federal courts, as the merits of the plaintiff's state law claims have not even been considered. Second, because the federal courts have only considered the appropriateness of exercising supplemental jurisdiction over pendent state law claims where all federal claims have been dismissed, there will be no replication by the state courts of efforts taken by the federal judiciary. Therefore, judicial economy does not favor exercising supplemental jurisdiction in this matter.

On the issue of convenience, while no party has alleged that either court will be more or

less convenient, the two courthouses are indisputably close in proximity to one another. *See WHS Entertainment*, 997 F.Supp. at 954. Moreover, given that this litigation is still in the pleading stage, presumably significant resources have not yet been expended by the parties. *See id*. at 955. As no other arguments have been raised in regard to convenience of the venue, the convenience factor does not weigh in favor of exercising supplemental jurisdiction.

The comity factor arguably weighs in favor of exercising supplemental jurisdiction, in that there appears to be statutory immunity against state law negligence claims for state officers and employees acting within the scope of their employment. Tenn. Code Ann. § 9-8-307(h). "The concept of 'comity' involves giving the proper respect for the respective functions and interest of the federal and state judicial systems." *Id*. (citing *777 N. White Station Road*, 937 F.Supp. at 1305). In this regard, a federal court "must protect its interests 'in ways that will not unduly interfere with the legitimate activity of the states.'" *WHS Entertainment*, 997 F.Supp. at 955 (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10 (1987)). However, the factors taken altogether along with Sixth Circuit jurisprudence weigh in favor of declining the exercise of supplemental jurisdiction. *See, e.g., Hahn v. Starbank*, 190 F.3d 708, 715 (6th Cir. 1999); *WHS Entertainment*, 997 F.Supp. at 955; *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996); *Shepherd v. Boysen*, 103 F.3d 130, *1 (6th Cir. 1996)(unreported). Therefore, the undersigned concludes that the court should decline to exercise supplemental jurisdiction, and should dismiss the plaintiff's state law claims without prejudice.

C. <u>Conclusion</u>

The plaintiff's claims against defendant Torrence are barred because the defendant is entitled to absolute immunity through the doctrine of quasi-judicial immunity.

Consideration of the additional arguments will therefore be unnecessary. Because the defendant is immune, the plaintiff has failed "to state a claim upon which relief can be granted", and his claims against defendant Torrence should be dismissed. Fed. R. Civ. P. 26(b)(6). The court, in its discretion, should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice.

### IV. Recommendation

In light of the foregoing, the Magistrate Judge hereby recommends that defendant Torrence's motion to dismiss (Docket Entry No. 42) be GRANTED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 20th day of August, 2012.

s/ John S. Bryant  
JOHN S. BRYANT  
UNITED STATES MAGISTRATE JUDGE