IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEROME M. TEATS | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:11-cv-00753 |
| | ) | |
| v. | ) | Judge Campbell/Bryant |
| | ) | |
| VICTOR S. JOHNSON, III, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

TO:    The Honorable Todd J. Campbell, District Judge


R E P O R T   A N D   R E C O M M E N D A T I O N

I.    Overview

This case was filed in the Middle District of Tennessee on August 5, 2011.

(Docket Entry No. 1). It was referred to the undersigned Magistrate Judge by Order of

Judge Campbell on August 30, 2011. (Docket Entry No. 8).

Currently pending before this court is a motion to dismiss for failure to state a

claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)

and for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)

by Defendants Victor S. Johnson, III, J. Carson Drumwright, Rachel Sobrero, Gayle Ray,

and the Tennessee Department of Correction. (Docket Entry No. 47). For the reasons

given below, the undersigned recommends that Defendants' motion be GRANTED.

II.   Statement of the Case

On August 5, 2011, Plaintiff Jerome M. Teats filed this action, *pro se* and *in forma pauperis*, and asserted civil rights claims pursuant to 42 U.S.C. §1983[1] against Defendants Johnson, Drumwright, Sobrero, Ray, and Tennessee Department of Correction (TDOC). (Docket Entry No. 1).  Plaintiff alleges that following his arrest on August 14, 2000, he entered into a negotiated plea agreement by which Plaintiff would serve a twelve-year sentence and receive pretrial sentence credits for his time spent in jail awaiting trial. (Docket Entry No. 1 at ¶ 17). Plaintiff claims that he discovered that his pretrial sentence credits were not reflected in the uniform judgment and subsequently filed a *pro se* motion to correct or amend the uniform judgment to accurately reflect the credits on July 20, 2010. (*Id*.) Plaintiff states that his motion was granted on September 13, 2010, and he was released from prison on September 17, 2010. (*Id*.) Plaintiff filed his original complaint in this matter on August 5, 2011, contending that he was incarcerated for one to eight months beyond the correct sentence expiration date because the pretrial sentence credits were not reflected in the original uniform judgment. (*Id*.)

Plaintiff cites Tenn. Code Ann. § 40-35-209(e)[2] and Tenn. Sup. Ct. R. 17[3] as requiring that the uniform judgment reflect the amount of pretrial sentence credit

---

[1] 42 U.S.C. § 1983 (2006) provides in pertinent part:
>    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

[2] Tenn. Code Ann. § 40-35-209(e)(1) (LEXIS through 2011 Regular Session) provides in pertinent part:
>    After the defendant is sentenced, the district attorney general shall complete and file within thirty (30) days the uniform judgment document for the conviction that is signed by all parties; but if not

awarded.  (Docket Entry No. 1 at ¶ 17).  Plaintiff alleges that Defendants have violated the

United States Constitution by (1) failing in their respective duties to enter an accurate

uniform judgment, (2) detaining Plaintiff beyond the expiration of his twelve-year

sentence, and (3) intentionally interfering with the just resolution of Plaintiff's situation,

either as individuals or in conspiracy with each other.  (*Id*.)  Finally, Plaintiff also raises

state-law negligence claims.  (*Id*.)

Plaintiff alleges that Defendant Drumwright, the prosecuting district attorney in

Plaintiff's case, failed in his duty to properly complete the uniform judgment in

Plaintiff's case (Docket Entry No. 1 at ¶ 28) and failed to provide Plaintiff or Plaintiff's

counsel with a copy of the judgment, with the intent to prevent the discovery of

Defendant Drumwright's failure to include the pretrial sentence credits.  (*Id*. at ¶ 29).

Plaintiff also contends that Defendant Drumwright failed to seek an amended judgment

by the court to correct his error or notify the court of his failure to include the credits.  (*Id*.

at ¶ 30).

Plaintiff alleges that Defendant Johnson, the Davidson County District Attorney,

similarly failed in his duty to properly complete the uniform judgment in Plaintiff's case

(Docket Entry No. 1 at ¶18), failed in his duty to designate an individual to complete the

---

signed by the parties, the clerk shall make a copy of the document available to the parties before
entry by the court, which shall indicate for each offense the following: . . . (P) The amount, if any,
of pretrial jail credit awarded pursuant to § 40-23-101.

[3] Tenn**.** Sup. Ct. R. 17 provides in pertinent part:
Pursuant to Tenn. Code Ann. § 40-35-209(f), the judgment document appended to this rule is
provided for the use of all trial judges of courts of record for convictions in all cases falling within
the Tennessee Criminal Sentencing Reform Act of 1989. The judgment document shall be in the
form provided and shall contain all of the information required by Tenn. Code Ann. § 40-35-
209(e).

judgment or otherwise complete the judgment properly himself (*Id*. at ¶ 19), failed to "supervise, train, and/or control the offending individual employees," thereby implicitly approving of those employees' unconstitutional actions in failing to properly complete the uniform judgment (*Id*. at ¶ 20), and failed to take immediate action to amend the uniform judgment after Plaintiff mailed a copy of his motion to correct or amend to Defendant Johnson (*Id*. at ¶ 21). Further, Plaintiff contends that Defendant Johnson "delayed, hindered or otherwise prevented" other Defendants from putting Plaintiff's motion to correct or amend on the docket or Judge Wyatt from quickly ruling. (*Id*. at ¶ 22). Finally, Plaintiff also asserts that Defendant Johnson conspired with other Defendants to "hinder, delay, and prevent plaintiff's release." (*Id*. at ¶ 23).

Against Defendant Sobrero, an assistant District Attorney in Davidson County, Plaintiff alleges constitutional violations for her failure to take immediate action to correct the uniform judgment after being notified of Plaintiff's situation. (Docket Entry No. 1 at ¶ 41). Plaintiff also contends that Defendant Sobrero either "delayed hindered or otherwise tried to prevent" other Defendants from addressing Plaintiff's motion (*Id*. at ¶ 42) or conspired with other Defendants to prevent Plaintiff's release (*Id*. at ¶ 43).

Plaintiff contends that Defendant TDOC failed to provide him with any information regarding his sentence and release, despite being aware of Plaintiff's situation (Docket Entry No. 1 at ¶ 73), and failed to properly "supervise, train and/or control" employees who are "responsible for providing correct information and calculating sentences," thereby implicitly approving of those employees' unconstitutional actions (*Id*. at ¶ 74).

Plaintiff alleges that Defendant Ray, a former TDOC Commissioner, failed to provide him with any information regarding his sentence or to move for Plaintiff's release, despite being aware of Plaintiff's situation. (Docket Entry No. 1 at ¶ 78). Plaintiff also contends that Defendant Ray failed to properly "supervise, train and/or control" employees who are "responsible for providing correct information and calculating sentences," thereby implicitly approving of those employees' unconstitutional actions. (*Id*. at ¶ 79).

In addition to the § 1983 claims stated above, Plaintiff has also sued Defendants Johnson, Drumwright, TDOC, and Ray for negligence per se and negligent infliction of emotional distress, which are claims governed by Tennessee state law. (Docket Entry No. 1 at ¶¶ 24, 25, 26, 27, 31, 32, 75, 76, 77, 80, 81, 82).

Against each Defendant, Plaintiff lists the following harms: (1) Plaintiff was denied access to court; (2) Plaintiff suffered a loss of liberty; (3) Plaintiff suffered over-detention for a minimum of one to eight months or more; (4) Plaintiff suffered from negligent infliction of emotional distress; (5) Plaintiff suffered loss of substantial income; (6) Plaintiff suffered loss of familial associations; (7) Plaintiff suffered loss of valuable time in educational pursuits; (8) Plaintiff accrued significant financial obligations; (9) Plaintiff failed to receive appropriate medical care for his Graves Disease, which resulted in either irreparable physical harm or harm requiring expensive treatment; and (10) Plaintiff suffered extreme mental anguish and duress due to over-detention. (Docket Entry No. 1 at ¶¶ 27, 32, 43, 77, 82).

Against each Defendant, Plaintiff seeks the following relief: (1) five hundred thousand dollars ($500,000) in compensatory damages; (2) one million dollars ($1,000,000) in general damages; and (3) one million dollars ($1,000,000) in punitive damages. (Docket Entry No. 1 at ¶¶ 27, 32, 43, 77, 82). In addition to these damages, Plaintiff also requests proper process, an injunction against any retaliatory acts of Defendants, and an injunction against Defendants to "cease failing to place on final judgments and/or grant sentence credits . . . for time they have already served on their sentences." (*Id*. at p. 50-51).

## III.   Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Although Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim," the Supreme Court held that the plaintiff must allege enough facts to make the claim plausible. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because the court is not to accept legal conclusions as factually true. *Id.* (citing *Twombly*, 550 U.S. at 555). While the Supreme Court has noted that determining whether a claim is plausible is necessarily context-specific, the Court also reasoned that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

6

'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

The Supreme Court has held that *pro se* complaints are to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Sixth Circuit, among others, has maintained that "basic pleading essentials" are still necessary. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## IV.    Legal Discussion

### A.  Statute of Limitations

Defendants contend that Plaintiff's claims are barred by a one-year statute of limitations, which started to run on July 20, 2010, when Plaintiff became aware of the error in his uniform judgment while he was still incarcerated. (Docket Entry No. 48 at pp. 10-11). Plaintiff maintains that the statute of limitations was tolled until his motion to correct the judgment was granted on September 13, 2010, making his complaint, filed on August 5, 2011, timely under the statute of limitations. (Docket Entry No. 91 at pp. 35-36).

Tenn. Code Ann. § 28-3-104 provides a one-year statute of limitations for civil actions brought under § 1983 in Tennessee. However, the Supreme Court in *Heck v. Humphries*, 512 U.S. 477, 490 (1994) held that the statute of limitations for a § 1983 action "attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Given that Plaintiff's § 1983 claims against Defendants pertain to an error in his uniform judgment of conviction, the undersigned

concludes that the statute of limitations should not bar Plaintiff's § 1983 claims, as it did not begin to run before September 13, 2010, the date his motion to correct the judgment was granted.

      B.  <u>Conclusory Claims against Defendants Johnson, Drumwright, and Sobrero</u>

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court held that plaintiffs must allege enough facts to make the claim plausible.  Although Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," the Supreme Court has made clear that plaintiffs must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  Pleadings that assert "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient.  *Id.* (citing *Twombly*, 550 U.S. at 555, 557). The Supreme Court reasoned:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*, 550 U.S.], at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

*Iqbal*, 556 U.S. at 678.  Moreover, as previously discussed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because the court is not required to accept legal conclusions as factually true.  *Id.* (citing *Twombly*, 550 U.S. at 555).  Finally, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

In the case at hand, Plaintiff alleges that Defendants Johnson and Sobrero either "delayed hindered or otherwise tried to prevent" other Defendants from addressing Plaintiff's motion (Docket Entry No. 1 at ¶¶ 22, 42) or conspired with other Defendants to prevent Plaintiff's release. (Id. at ¶¶ 23, 43). Plaintiff also alleges that Defendant Drumwright intentionally failed to provide Plaintiff or his counsel with a copy of the uniform judgment with the intent to prevent Plaintiff from discovering the error. (*Id.* at ¶ 29). Plaintiff cites *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000), where the Sixth Circuit acknowledges that often in conspiracy cases direct evidence is rare and thus circumstantial evidence may suffice. Plaintiff, however, provides no further factual allegations indicative of the existence of any such evidence. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Plaintiff's allegations fall within the Supreme Court's definition of "legal conclusions," where the possibility of misconduct is present, but the complaint has not shown an entitlement to relief. *Iqbal*, 556 U.S. at 555. The undersigned concludes that these conclusory claims against Defendants Johnson, Drumwright, and Sobrero should be dismissed.

C. <u>Sovereign Immunity: Official Capacity Claims against Defendant TDOC and Defendants Johnson, Drumwright, Sobrero, and Ray</u>

Suits brought against state employees in their official capacity are treated as suits brought against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The Sixth Circuit in *Pusey* reasoned that although the prosecutor was employed by the city, the prosecutor acted on behalf of the state when prosecuting state criminal charges. *Id.* Given the prosecutor's relationship to the state, the suit against the prosecutor in his official capacity was treated as a suit against the state. *Id.* at 658. Similarly, Plaintiff's claims against Defendants in their official capacities—Johnson, Drumwright, and Sobrero as district attorneys and Ray as an employee of a state agency—are treated as claims against the state of Tennessee. *See id.*

Under the Eleventh Amendment, suits by citizens against states, state agencies, and state officials for damages are barred in both federal and state courts unless Congress or the state being sued expressly waives immunity from suit. U.S. Const. amend. XI; *See also Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009); *Alden v. Maine*, 527 U.S. 706 (1999); *Hoffman v. Connecticut Dep't of Income Maint.*, 492 U.S. 96 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Hans v. Louisiana*, 134 U.S. 1 (1890). The Supreme Court has held that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Additionally, this Court has previously held that Tennessee has not waived its Eleventh

Amendment immunity for claims brought under § 1983. *See, e.g., Am. Civil Liberties Union v. Tennessee*, 496 F. Supp. 218, 220 (M.D. Tenn. 1980).

Moreover, § 1983 requires that a plaintiff allege "the violation of a right secured by the Constitution . . . committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). The Supreme Court, however, has held that a state is "not a 'person' within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989).

In sum, Plaintiff's claims against Defendants in their official capacities are treated as claims against the state of Tennessee. *See, e.g., Pusey*, 11 F.3d at 657. Given that Tennessee has not waived its Eleventh Amendment immunity from suit and that the state is not a "person" for purposes of a § 1983 action, Plaintiff's claims for damages against Defendants Johnson, Drumwright, Sobrero, and Ray in their official capacities should be dismissed. Plaintiff's claims for damages against TDOC should also be dismissed, as state agencies are immune from suit under the Eleventh Amendment. *See Cady*, 574 F.3d at 342.

  D. <u>Prosecutorial Immunity: Individual Capacity Claims against Defendants Johnson, Drumwright, and Sobrero</u>

In *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976), the Supreme Court affirmed the "virtually unanimous" Court of Appeals holdings that extended "absolute immunity from § 1983 suits for damages" to prosecutors acting "within the scope of [their] prosecutorial duties." Citing concerns rooted in common-law immunity for judges, the Supreme Court reasoned that without a similar immunity for prosecutors acting within the scope of their

duties, the "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties." *Id.* at 423. The Supreme Court ultimately adopted a "functional approach" that examines "the nature of the function performed, not the identity of the actor who performed it," to determine whether absolute immunity should apply. *Forrester v. White*, 484 U.S. 219, 229 (1988); *see also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). The critical question, according to the Sixth Circuit, is "how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Holloway v. Bush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (quoting *Pusey*, 11 F.3d at 658).

Under the functional approach, absolute immunity should only protect prosecutorial acts that are "intimately associated with the judicial process," and not those "administrative" or "investigative" acts that are "too attenuated to the judicial process." *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997) (citing *Buckley*, 509 U.S. at 273). In *Burns v. Reed*, 500 U.S. 478, 496 (1991), the Supreme Court held that absolute immunity does not extend to "the act of giving legal advice to police" regarding a potential investigation. The Supreme Court found in *Fletcher v. Kalina* that absolute immunity does not apply to a prosecutor's statements in an affidavit alleging probable cause. 522 U.S. 118, 131 (1997). Similarly, in *Buckley*, the Supreme Court held that statements made by a prosecutor outside of court at a press conference are administrative in nature and not covered by absolute immunity. 509 U.S. at 277-78.

Conversely, the Sixth Circuit in *Pusey* held that a prosecutor's failure to notify the plaintiff of a hearing was "intimately associated with the judicial phase of the criminal

12

process," reasoning that this activity was "simply a litigation-related duty[,] . . . one of those core prosecutorial functions which is protected by absolute immunity." 11 F.3d at 658. In *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994), the Sixth Circuit reasoned that "enforcing or executing a court order is intrinsically associated with a judicial proceeding." The Sixth Circuit has also noted that absolute immunity applies to administrative or investigative acts that are "necessary for a prosecutor to initiate or maintain a criminal prosecution." *Ireland*, 113 F.3d at 1447. Further, the allegation of "impure and malicious motives" on the part of the prosecutor is irrelevant when the act in question falls within the prosecutor's "advocacy functions intimately associated with the judicial phase of the criminal process." *Id.*

Moreover, in *Skinner v. Govorchin*, the Sixth Circuit noted that "[s]ince *Imbler* courts have extended the immunity beyond 'initiating a prosecution and . . . presenting the State's case' . . . to cover any activities undertaken 'in connection with [one's] duties in functioning as a prosecutor.'" 463 F.3d 518, 525 (6th Cir. 2006) (quoting *Imbler*, 424 U.S. at 431) (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). In *Skinner*, the Sixth Circuit held that an assistant attorney general had absolute immunity from suit when the plaintiff charged him with authorizing a wrongful wage garnishment from the plaintiff's prison account. *Id.* at 524-25. The Sixth Circuit held that although the plaintiff's wages were wrongfully garnished, the assistant attorney general's action was still "intimately associated with the judicial phase" and entitled to absolute immunity. *Id.* In its reasoning, the court noted that the assistant attorney general's act of garnishment was authorized by federal statute, *id.* at 523, and represents a "paradigmatic

act of advocacy on behalf of the state, as the pursuit of costs at the conclusion of litigation is a function ordinarily performed by an attorney acting on behalf of a client and thus is an integral part of the litigation itself." *Id.* at 525.

i.      Defendants Johnson and Drumwright's failure to properly complete Plaintiff's uniform judgment

At issue here is whether the actions of Defendants Johnson and Drumwright pertaining to Plaintiff's uniform judgment qualify for absolute prosecutorial immunity. Defendants contend that absolute immunity should apply to them in this case because filling out a uniform judgment is part of a Tennessee prosecutor's duty that is intimately associated with the judicial process. (Docket Entry No. 48 at p. 4). Plaintiff contends that Defendants Johnson and Drumwright are not entitled to prosecutorial immunity because the completion of a uniform judgment is an administrative act not covered by immunity and because the prosecutor's role as an advocate ends when the sentencing is complete and the "adversarial matters [are] concluded," which is before the completion of a uniform judgment. (Docket Entry No. 91 at p. 15-16).

The Sixth Circuit in *Skinner*, however, held that an assistant attorney general had absolute immunity for wrongfully garnishing the plaintiff's wages while the plaintiff was in prison. 463 F.3d at 520-21. Despite the fact that the garnishment occurred after the plaintiff's sentencing and after the "adversarial matters" of the courtroom were settled, the Sixth Circuit reasoned that the assistant attorney general's act was "intimately associated with the judicial phase" and entitled to absolute immunity because it was

required by statute and was "ordinarily performed" by the assistant attorney general in this situation.  *Id.* at 525.  As the Sixth Circuit pointed out, prosecutorial immunity has broadened beyond merely "initiating a prosecution and . . . presenting the State's case."  *Id.* (quoting *Imbler*, 424 U.S. at 431).  In *Skinner*, the Sixth Circuit noted that prosecutorial immunity can now apply to "any activities taken 'in connection with [one's] duties in functioning as a prosecutor.'"  *Id.* (quoting *Higgason*, 288 F.3d at 877).  Thus, the act of completing a uniform judgment is not precluded from prosecutorial immunity simply because it occurs after a plaintiff's conviction.  The court must examine the "function" of completing a uniform judgment to determine whether it is "intimately associated" with the judicial process or whether it is administrative in nature.

The activities recognized by the Supreme Court as "administrative" or "investigative" often occur outside the initiation and completion of a criminal case.  *See Fletcher*, 522 U.S. at 131 (holding that statements made by prosecutors to support application for an arrest warrant do not have absolute immunity); *Buckley*, 509 U.S. at 277-78 (ruling that statements made by prosecutors outside of court at a press conference do not have absolute immunity); *Burns*, 500 U.S. at 496 (finding that prosecutors giving legal advice to police do not have absolute immunity).  The Sixth Circuit has consistently granted absolute immunity to actions by prosecutors occurring within the scope of their prosecutorial duties.  *See Skinner*, 463 F.3d at 525 (holding that a prosecutor's garnishment of the plaintiff's wages pursuant to statute had absolute immunity); *Ireland*, 113 F.3d at 1447 (reasoning that absolute immunity extends to administrative acts necessary to maintain criminal prosecution); *Bush*, 38 F.3d at 847 ("[E]nforcing or

15

executing a court order is intrinsically associated with a judicial proceeding."); *Pusey*, 11 F.3d at 658 (ruling that a prosecutor's failure to notify the plaintiff of a hearing was a litigation-related duty covered by absolute immunity).

Under Tenn. Code Ann. § 40-35-209(e), prosecutors have a duty to complete and file a uniform judgment after a defendant is sentenced. Tenn. Code Ann. § 40-35-209(e). In effect, this statute extends the prosecutor's role in criminal cases, where he acts as an advocate for the government, to include the duty of completing and filing the uniform judgment against the defendant. This duty is distinguishable from the types of actions recognized as "administrative" by the Supreme Court. Those administrative acts, unlike the completion of a uniform judgment, consistently occurred outside of the judicial process and were undertaken upon the prosecutor's own initiative. *See Fletcher*, 522 U.S. at 131; *Buckley*, 509 U.S. at 277-78; *Burns*, 500 U.S. at 496. Here, the completion of a uniform judgment is a duty imposed on the prosecutor by state law. Moreover, the completion of a uniform judgment is essential to the completion of a case. Under a functional approach, these factors indicate that the completion of a uniform judgment is "intimately associated with the judicial phase of the criminal process." *Joseph*, 795 at 554.

Considering "the nature of the function performed" and its connection to the judicial phase of the criminal process, the undersigned concludes that the completion of a uniform judgment, pursuant to the prosecutor's statutory duty, is a "core prosecutorial function" in Tennessee. Tenn. Code Ann. § 40-35-209(e); *Pusey*, 11 F.3d at 658; *Forrester*, 484 U.S. at 229; *see also Skinner*, 463 F.3d at 525. Thus, the undersigned

concludes that Defendants Johnson and Drumwright are entitled to absolute prosecutorial immunity for their acts pertaining to the completion of Plaintiff's uniform judgment in this case.

ii.    Defendants Johnson, Drumwright, and Sobrero's failure to take immediate action to amend Plaintiff's uniform judgment

Plaintiff also alleges that Defendants Johnson, Drumwright, and Sobrero knowingly failed to "take immediate action to have the uniform judgment amended" to include the pretrial sentence credits upon being notified of the problem by Plaintiff's July 2010 motion. (Docket Entry No. 1 at ¶¶ 21, 30, 41). In his response, Plaintiff emphasizes the allegedly malicious motives of Defendants in their failure to amend the uniform judgment. (Docket Entry No. 91 at pp. 16-20). The issue here, however, is not whether Defendants acted intentionally or maliciously. The Sixth Circuit in *Ireland* made clear that allegations of "impure and malicious motives [of] the prosecutors is of no consequence" when absolute immunity covers the prosecutor's action. 113 F.3d at 1447. Thus, the issue here is only whether Defendants' failure to amend the uniform judgment is protected by absolute immunity.

In *Smith v. Shelby Cnty., Tennessee*, 3 Fed. Appx. 436, 438 (6th Cir. 2001), where the plaintiff contended that a prosecutor delayed adjudication of the plaintiff's post-conviction petition, the Sixth Circuit found that the prosecutor's actions were not administrative, as the plaintiff asserted. Rather, the court concluded that the prosecutor's involvement with plaintiff's petition "clearly involved the adjudication of [plaintiff's]

criminal case" and that immunity applied.  *Id.*  Here, Plaintiff has filed a § 1983 action

against Defendants Johnson, Drumwright, and Sobrero alleging that their failure to take

immediate action to amend the uniform judgment violated Plaintiff's rights.  (Docket

Entry No. 1).  Plaintiff points out that Tenn. Code Ann. § 40-35-209(g) requires that a

uniform judgment be returned to the sentencing court to be completed if some of the

information required in subsection (e), such as any pretrial sentencing credit, is not

included.   However, the failure of the prosecuting attorneys to meet this requirement will

not subject them to liability for money damages, because their function in acting or not

acting on such matters is not merely administrative, but is adjudicatory in the sense that it

bears investigation to discern whether the uniform judgment is in fact incomplete, and

(potentially) an application to the court to reaffirm its judgment in light of what that

investigation reveals.  Defendants are immune from any potential liability for failure to

take immediate action to amend the uniform judgment.

> E.   Respondeat Superior: Claims against Defendants Johnson and Ray

Supervisors cannot be held liable under § 1983 for the failure to control

employees. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978);

*Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982); *See also Bellamy v.*

*Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Under § 1983, plaintiffs must show that a

supervisor "encouraged the specific incident of misconduct" or was personally involved

in the incident.  *Hays*, 668 F.2d at 874; *Wilson v. Beebe*, 612 F.2d 275, 276 (6th Cir.

1980); *See also Rizzo v. Goode*, 423 U.S. 362 (1976).  Further, "liability under § 1983

must be based on active unconstitutional behavior and cannot be based upon 'a mere

failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998)).

Here, Plaintiff alleges that Defendants Johnson and Ray failed to "properly supervise, train, and/or control the offending individual employees" of their respective offices and implicitly approved of, or knowingly acquiesced in, the employees' unconstitutional actions. (Docket Entry No. 1 at ¶¶ 20, 79). However, Plaintiff has not alleged Defendants' direct, personal participation in improper conduct, nor has he pled anything but bare legal conclusions in regard to their knowing acquiescence in their subordinates' alleged wrongdoing. This is not sufficient to sustain a § 1983 claim against Defendants Johnson and Ray. *See Iqbal*, 556 U.S. at 678.

### F. State Law Claims

The Defendants assert, and Plaintiff concedes, that Tenn. Code Ann. § 9-8-307(h) extends absolute immunity to state employees "from liability for acts or omissions within the scope of the officer's or employee's office or employment." (Docket Entry No. 91 at p. 36-37) (discussing Tenn. Code Ann. § 9-8-307(h)). For the purpose of statutory immunity, a state officer or employee is defined as "[a]ny person who is employed in the service of and whose compensation is payable by the state…." Tenn. Code Ann. § 8-42-101(3). *See also Prewitt v. Semmes-Murphey Clinic, P.C.*, 2007 WL 879565, at *6 (Tenn. Ct. App. 2007) ("Tenn. Code Ann. § 9-8-307(h) expressly provides immunity for state employees acting within the scope of their employment.").

The parties do not dispute that Defendants Johnson, Drumwright, Sobrero[4] and Ray were employees of the state of Tennessee at all times relevant to this litigation for the purposes of statutory immunity. However, Plaintiff contends that the Defendants are not protected by the statutory grant of immunity because it does not cover "criminal acts or omissions done for personal gain." (Docket Entry No. 91 at p. 37) (discussing Tenn. Code Ann. § 9-8-307(h)). In furtherance of this rebuttal, Plaintiff claims that "further proof will reveal the negligent acts and omissions, alleged, as criminal and further done for" various forms of "personal gain." (*Id*.).

Given these disputed issues of state statutory immunity for the individual defendants, as well as the fact that the state legislature has reposed exclusive jurisdiction in the state courts over claims against state agencies such as TDOC, and the fact that all federal claims have been recommended subject to dismissal, the undersigned concludes that this Court should decline to exercise its supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

Federal courts are empowered with supplemental jurisdiction over "any civil action of which the district courts have original jurisdiction" when the additional claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) (codified in § 1367(a) and holding that jurisdiction over pendent state law claims is proper only when the state claim and the federal claim(s) over which the court has

---

[4] Plaintiff has not alleged any claim based in state law against Defendant Sobrero.

original jurisdiction "derive from a common nucleus of operative fact," and are so closely

related that the plaintiff "would ordinarily be expected to try all of them in one judicial

proceeding."). However even when such a relationship exists, § 1367 dictates that the

exercise of supplemental jurisdiction is a matter of the court's discretion.[5] The United

States Supreme Court has expounded further that:

> Depending on a host of factors, then—including the
> circumstances of the particular case, the nature of the state
> law claims, the character of the governing state law, and the
> relationship between the state and federal claims—district
> courts may decline to exercise jurisdiction over
> supplemental state law claims. The statute thereby reflects
> the understanding that, when deciding whether to exercise
> supplemental jurisdiction, "a federal court should consider
> and weigh in each case, and at every stage of the litigation,
> the values of judicial economy, convenience, fairness, and
> comity."

*City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (quoting

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Therefore, this Court's

jurisdiction over Plaintiff's pendent state law claims is a matter of discretion.

With regard to the claims against Defendant TDOC, the court should decline to

exercise its supplemental jurisdiction under the reasoning articulated in *Beddingfield v.*

*City of Pulaski*, 666 F.Supp. 1064 (M.D. Tenn. 1987), *rev'd on other grounds* 861 F.2d

---

[5] (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)
if—

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has
original jurisdiction,

    (3) the district court has dismissed all claims over which is has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

968 (6th Cir. 1988). Generally, state agencies are immune from suit under the Eleventh Amendment unless they have waived liability. *Cady*, 574 F.3d at 342. *See also* discussion of Eleventh Amendment immunity, *supra* at 9-11. Under the Tennessee Governmental Tort and Liability Act (TGTLA), "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment" with specific enumerated exceptions. Tenn. Code Ann. § 29-20-205. Therefore, the Tennessee legislature has waived immunity for claims sounding in negligence against governmental entities such as Defendant TDOC and provided a remedy under the TGTLA. *See Buchanan v. Williams*, 434 F.Supp.2d 521, 533 (M.D. Tenn. 2006).

This Court in *Beddingfield* ruled that federal courts should, as a matter of discretion, decline supplemental jurisdiction over claims against governmental entities covered under the TGTLA because § 29-20-307 dictates "that actions for negligence against governmental entities are within the 'exclusive original jurisdiction' of the circuit courts and must be heard 'without the intervention of a jury.'" *Beddingfield*, 666 F.Supp. at 1066. Claims under the TGTLA "must be brought 'in strict compliance'" with the Act. *Id.* (quoting Tenn. Code Ann. § 29-20-201(c)). *See also Buchanan*, 434 F.Supp. at 533; *Fromuth v. Metropolitan Gov't of Nashville, Division County*, 158 F.Supp.2d 787, 789 (M.D. Tenn. 2001).

Both this Court and the Sixth Circuit have repeatedly held that the Tennessee legislature's "unequivocal preference" that TGTLA claims be adjudicated in the circuit courts of the state is an exceptional circumstance justifying the district court's decision to

decline supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(4).  *See, e.g., Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000), *abrogated in part by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), *as stated in DiLaura v. Twp. Of Ann Arbor*, 471 F.3d 666, 671 n.2 (6th Cir. 2006); *Bluedorn v. Wojnarek*, 2008 WL 4791540, at *12 (M.D. Tenn. Oct. 29, 2008) (citing cases).

This Court has elected to exercise supplemental jurisdiction over pendent state law claims under the TGTLA "where invoking the exceptional circumstance objection would necessitate duplicative litigation which would be wasteful of judicial and litigant resources…."  *Brown v. City of Franklin*, 2011 WL 2971092, at *8 (M.D. Tenn. July 20, 2011) (not reported) (citing *Birgs v. City of Memphis*, 686 F.Supp.2d 776, 778 (W.D. Tenn. 2010)).  *See also Lopez v. Metropolitan Gov't of Nashville and Davidson Cnty.*, 646 F.Supp.2d 891, 921 (M.D. Tenn. 2009).  In *City of Franklin*, this Court exercised its discretion to take up the plaintiff's state law claims because they arose out of the same "nucleus of facts" as the surviving civil rights claim.  2011 WL 2971092, at *8.  In the case *sub judice*, Plaintiff's federal civil rights claims against these defendants have been found to be subject to dismissal, and thus the efficiency incentives cited in *City of Franklin* are not presented.  Therefore, the undersigned concludes that the Court should properly decline to exercise supplemental jurisdiction over the state law claims against Defendant TDOC.

V.  <u>Recommendation</u>

For the reasons stated above, the undersigned Magistrate Judge recommends that Defendants' motion to dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction (Docket Entry No. 47) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any part has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 20th day of August, 2012.

s/ John S. Bryant_____
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE